# FLATHER *v.* WEBER.

---

PATENTS; INTERFERENCE.

1. In an interference between applicants for a patent, the burden is on the junior applicant, or one whose application was last filed, to establish by a preponderance of testimony his alleged prior and superior claim to the invention.

2. Where the senior party to an interference involving an invention of amber varnish and the process of making the same, was a builder and man of means, while the junior party was a violinist, with a special interest in old violins and the character of varnish used on them, and it was conceded that the latter was the mover and instigator of an effort on the part of both to produce the varnish, and that the experiments made after the former became interested were made in the shed of the junior party with no others present to see what was done, and the testimony of each of the parties was flatly contradictory of that of the other, while the senior party also contradicted many of the facts proven by other witnesses, it was *held* that the weight of the testimony was with the junior party, the evidence showing conception by him before the latter was taken into the business and that both co-operated in the experiments to reduce to practice, and, that neither claiming joint discovery, priority should be awarded the junior party.

3. Where the junior party, in such an interference, signed the applica-
tion of the senior party, but it appeared that he did so suppos-
ing that it was for their joint benefit, it was *held* that the cir-
cumstance should not be construed against his claim as inventor
and in favor of that of his rival.

No £07. Patent Appeals.  Submitted November 12, 1902.  Decided January 21, 1903.

HEARING on an appeal from a decision of the Commis-
sioner of Patents in an interference proceeding.

*Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Ellis Spear* and *Mr. James M. Spear* for the ap-
pellant.

*Mr. C. L. Sturtevant* and *Mr. 'A. P. Greeley* for the
appellee.

Mr. Chief Justice ALVEY delivered the opinion of the
Court:

This appeal comes from the Patent Office, and is taken
from the decision of the Commissioner of Patents made in
what is termed an interference proceeding as between the
claim of William F. Weber and that of George W. Flather
to an invention or discovery of an amber varnish and the
process of making the same.   The question that has been
considered by the tribunals of the Patent Office, and which
is presented for decision on this appeal, is not in strictness
the question of priority of invention or discovery of inde-
pendent but interfering inventions or discoveries, but to
which one of the two parties making separate applications
for patent, does the right of original invention or discovery
of the subject-matter described in the issue belong — each
party claiming to be the sole and rightful discoverer of the
subject-matter of the applications.

Flather is senior party, and filed his application on July
5, 1900.   Weber filed his application December 24, 1900.

This position of the parties on the record makes it incumbent upon Weber, the junior party, in order to prevail over the prior application of Flather, to establish by a preponderance of proof his alleged prior and superior claim to the invention or discovery, the subject-matter of the issue. The issue between the parties, as framed in the Patent Office, is as follows:

" The herein-described process of dissolving amber in fatty oil, for the purpose of forming varnish, said process consisting in mixing the amber with the oil in the proportion of one pound of amber to not exceeding one and one-half pints of oil, heating the mixture in an open vessel to a temperature of not less than 600° Fahrenheit, until a scum consisting of particles of softened amber is formed over the entire surface, maintaining such coating of scum unbroken during the further heating of the mixture, whereby the mixture is brought to a temperature in excess of 700° Fahrenheit, and the particles of amber are gradually and completely dissolved in the oil."

Testimony was taken by both parties, though most of the evidence produced on either side consists of the testimony of the parties themselves. The examinations of the parties, both on direct and cross-examination, were very protracted and long drawn out, and there is nothing more observable or striking in their testimony than their almost universal contradiction of each other in regard to nearly every material circumstance of the case, and, indeed, in regard to much that is not material. Weber was examined first and Flather replied. It would be difficult to arrive at a conclusion in the case, as to the real discovery of the matter of the issue, if it depended alone upon the testimony of the parties themselves. But there are other witnesses upon whose testimony more reliance can be placed, and there are some prominent circumstances of the case that speak for themselves, and whose significance cannot be perverted by any interested motive of statement.

Flather is a carpenter and builder by trade, and Weber is a musician, a violinist by profession, and seems to have a special fancy or passion for old violins and for attempting

to discover the character of the varnish that was used in their manufacture or finish, supposing that their superior qualities depend in a large degree upon the varnish that was applied to them.  He is strongly persuaded, it seems, that the varnish that was used in the making of the famous old Cremona violins was amber varnish, and one of the great objects of his life, for many years past, has been to discover the method by which to produce amber varnish, so that he could improve the violins of the present time.  He has, however, been thriftless and impecunious, and Flather was and is a man of means, and being a neighbor and an intimate of Weber, both residing in the city of Washington, was willing to advance some small sums of money to aid and promote in making the discovery, in which Weber had great faith and confidence, and in which he seems to have enlisted the confidence and zeal of Flather.  The matter was undertaken and experiments were made by the joint co-operation of the two; and it would seem that they did succeed in producing amber varnish, by experiments made by them — the experiments being made in the shed at the house of Weber.  It is conceded that Weber was the mover and instigator of the whole effort to produce the varnish now claimed to be successfully discovered.  The counsel for Flather, in their brief, in referring to the evidence, say:

" Manifestly Weber has been, in all this testimony, endeavoring to establish the belief that he had made the invention before he took Flather into the business.  Weber undoubtedly did start Flather in the business by calling his attention to the alleged ' lost art ' of amber varnish, and Flather never would have thought of this or known anything about it, except for Weber.  He appreciated this fact.  Weber suggested the field for invention and was morbidly anxious to get this varnish for fiddles, which then would be exactly like the old and highly-prized violins."

This is a candid concession, and when taken in connection with the well-established and undisputed facts, that all the experiments that were made after Flather became interested, were made in the presence and with the co-operation of

Weber, both taking an interest alike in the result sought to
be produced by the experiments, and that the experiments
were all made in Weber's shed, it is difficult to conceive that
Flather can now, in justice and reason, claim to be the sole
and exclusive inventor or discoverer of the varnish.    The
most that he can or ought to claim is that of joint discoverer
or inventor.    But he does not seem to be contented to rest
on that claim.

The examiner of interferences, upon full and careful ex-
amination of all the evidence, awarded priority to Weber;
but upon appeal by Flather that decision was reversed by
the examiners-in-chief, and priority was awarded to Flather
by that tribunal.    Upon appeal to the Commissioner of Pat-
ents that decision was reversed and priority was awarded to
Weber, as had been done by the examiner of interferences.
The examiners-in-chief founded their opinion not upon the
testimony produced by either of the parties, but solely and
exclusively upon  the fact of seniority of  application  by
Flather.    They say:

"As we view the case it is immaterial whether Flather's
testimony is in part or wholly discredited, since the deter-
mination of the case rests upon the fact of seniority, and not
upon any testimony appearing in the record of either of the
interferents."

And in regard to a fact that has been much dwelt upon
by counsel for Flather, that is to say, that Weber appears
to have subscribed the application filed by and in the name
of Flather, as a witness, and not as a joint applicant, the
examiners-in-chief say:

" Weber appears as a subscribing witness to the application
of Flather.    Weber's explanation of this fact is, that being
ignorant of the patent law, he supposed that the application
was to be filed in the joint names of himself and Flather.
He, however, admits that the application was Flather's.    The
evidence does not show that Weber was actually and inten-
tionally deceived, although it may perhaps be true that he
did not fully understand the transaction."

That Weber did not intend to place himself in the posi-

tion simply of a disinterested witness by signing the appli-
cation of Flather, is made clear beyond doubt, by the circum-
stances attending the signing of the paper by Weber, and
also by the facts as sworn to by both Weber and Flather;
their testimony tending to show that what was done was
done for and in the interest of both parties, and was for
the purpose of perfecting the application about to be made,
for the benefit of both, whatever may have been the secret
intention of Flather at the time or subsequently. We there-
fore agree with the examiners-in-chief, that the signature of
Weber as a witness to the application filed by Flather is not
a fact that can in fairness be construed, under the circum-
stances, against the claim of Weber and in favor of that
of Flather. But we do not agree with the examiners-in-chief
that the decision of the case should rest alone and exclusively
upon the fact of seniority of application by Flather. It is
very true that there is an irreconcilable conflict in the tes-
timony of the two parties to this interference proceeding.
Flather not only contradicts the principal facts testified
to by Weber, but he contradicts many of the principal facts
proven by other witnesses. In such state of the case, it is
simply out of the question that the testimony of Flather
should be taken to discredit and disprove the testimony
of all other witnesses, and that his testimony should be
accepted as controlling. The weight of the testimony of the
parties and its inherent probabilities must be considered in
the light of all the circumstances of the case, and though
conflict may exist, a rational conclusion may be drawn from
what appears to be the real transaction as disclosed by the
surrounding circumstances — such circumstances as lend
support to the credibility of the testimony of one of the
parties as opposed to that of another. We think the evidence
in this case abundantly proves that the conception of the
invention or discovery was not by Flather but by Weber
before Flather was taken into the business; and that Flather
and Weber simply co-operated in the experiments to reduce
the conception to practice.

It appears to be sufficiently established that the invention

or discovery was reduced to practice, after a series of experiments which were performed in the presence of both parties, in Weber's shed, during the first half of the year 1900. Flather claims that this reduction to practice was the sole result of his own independent experiments and discovery. Weber, on the contrary, contends that, although Flather stood over the stove and attended to the details of the operation, everything that was done was based upon his, Weber's, conception and was performed under his supervision. Flather does not admit that Weber had anything at all to do with the invention or discovery, except to wait upon him, to run errands for him, and to stand in the door of the shed to prevent others from intruding.

The Commissioner has gone over the facts of the case with great care and his conclusion drawn from them would seem to be in all respects entirely satisfactory. He says:

" The invention was reduced to practice in June, 1900, prior to the date of filing Flather's application. This state of facts is admitted by both parties and must therefore be accepted as proved. The question is, which one of the two parties is entitled to this date of actual reduction to practice, or, in other words, which one is in law entitled to the grant of the patent.

" The testimony of Weber that there was a partnership between himself and Flather for the purpose of making and exploiting the invention or discovery is corroborated by witnesses Lee and Boucher. There is much evidence of a general character which tends to support this testimony of Weber. Flather's own actions until the date of his application tend to support Weber's contention. Weber and Flather were certainly co-workers with respect to the discovery. Flather denies the partnership relation, so he cannot avail himself of it. Viewing Flather's case, therefore, in its most favorable light, the facts are such, as shown by the testimony, that Flather's claim of invention or discovery could only be sustained, if at all, on the theory of joint invention or discovery with Weber. Flather makes no such claim, however, nor is such claim made on the part of Weber.

Under no circumstances, therefore, either in law or in fact can Flather be held to be the sole inventor of the issue. Weber, on the other hand, is entitled to be adjudged not only the first, but, the sole inventor of the invention of the issue. In either aspect of the case, that is, whether there was a partnership relation between Weber and Flather, or whether there was no such relation, Weber has effectually overcome the burden placed upon him by reason of the fact that he is the junior party; and after giving due consideration to the fact that his name appears as a witness to the signature of Flather's application Weber is held to be the true inventor of the invention of the issue."

This is the summing up and conclusion of the Commissioner of Patents, upon full and thorough examination of the facts of the case, and in which conclusion we entirely concur. The decision of the Commissioner is therefore affirmed, and the case with this opinion will be certified to the Commissioner of Patents, as required by law; and it is so ordered. Decision of Commisioner *affirmed.*